UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
SHIELA F. CRAAN,

                              Plaintiff,                              CV 05-5681 (DRH) (ETB)

    -against-                                                REPORT AND
                                                                                RECOMMENDATION

AUSTRALIAN UNITED STATES
SERVICES IN EDUCATION, INC.,

                              Defendant.
------------------------------------------------------------------x

TO THE HONORABLE DENIS R. HURLEY, UNITED STATES DISTRICT JUDGE:

      Plaintiff, Sheila Craan ("Craan"), brings this action, pursuant to the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., and the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296, et seq., alleging that the defendant, Australian United States Services in Education, Inc. ("AUSSIE"), unlawfully discriminated against her on the basis of disability when it terminated her employment. Presently before the court is the defendant's motion for summary judgment, pursuant to Federal Rule of Civil Procedure 56. For the following reasons, I recommend that defendant's motion be granted.

## FACTS

      Plaintiff began her employment with AUSSIE in September 2003. (Def. 56.1 Stmt. ¶ 1; Pl. 56.1 Stmt. ¶ 1.) AUSSIE is a privately held professional development company with its principal place of business located in Port Washington, New York. (Aff. of Thomasine Sandul, dated Feb. 19, 2007 ("Sandul Aff.), ¶ 4.) AUSSIE assists teachers in improving the literacy and

mathematics standards of elementary, middle and high school students, primarily through the placement of educational consultants in schools. (Id., ¶¶ 5-6.) AUSSIE's clients include boards of education, school districts and other public agencies throughout the United States. (Id., ¶ 5.) Plaintiff was not physically disabled at the time she commenced her employment with AUSSIE. (Def. 56.1 Stmt. ¶ 3; Pl. 56.1 Stmt. ¶ 3.)

Approximately one week after plaintiff began working for AUSSIE, she complained to her supervisor, Thomasine Sandul ("Sandul"), that the office chair provided to her was uncomfortable. (Dep. of Sheila F. Craan, dated Nov. 21, 2006 ("Craan Dep."), 35-36; Sandul Aff. ¶ 10.) Sandul provided plaintiff with a new chair "right away." (Craan Dep, 36; Sandul Aff. ¶ 10.) Approximately two weeks after receiving the second office chair, plaintiff complained to Sandul that this chair was uncomfortable as well. (Craan Dep. 37.) According to plaintiff, due to the uncomfortable position of the back rest, she was forced to place a "book bag" between her back and the back of the chair in order to "rest [her] back" and to "feel more comfortable." (Id., 37-38.) The uncomfortableness of both the first and second office chairs did not prevent plaintiff from performing her duties at AUSSIE. (Id., 38-39.)

Plaintiff continued to complain to Sandul about the comfort level of her office chair throughout the remainder of 2003 and into the early part of 2004. (Id. 40-41.) In December 2003, Sandul indicated to plaintiff that she would order plaintiff a new chair; however, plaintiff did not receive a new chair at this time. (Id., 40-42.) A new chair was ultimately ordered for plaintiff in March 2004, which she received in April 2004. (Id. 42-44.)

In March 2004, plaintiff's primary responsibilities at AUSSIE concerned the computerized processing of consultant invoices. (Def. 56.1 Stmt. ¶ 4; Pl. 56.1 Stmt. ¶ 4.) This

involved the computerized data entry of consultant time followed by the creation of a client invoice.[1] (Sandul Aff., ¶ 8.) The months of April, May and June of 2004 were the busiest for AUSSIE with respect to the processing of consultant invoices as those months constituted AUSSIE's fourth quarter billing cycle. (Def. 56.1 Stmt. ¶ 5; Pl. 56.1 Stmt. ¶ 5.) Accordingly, plaintiff was expected to process approximately $1.3 million worth of consultant invoices during this three-month period. (Def. 56.1 Stmt. ¶ 6; P. 56.1 Stmt. ¶ 6.)

On March 12, 2004, plaintiff experienced difficulty walking and a burning, numbing pain in her arms and legs, as well as the inability to move her right arm. (Craan Dep., 52-53.) Plaintiff also experienced problems with her balance. (Id., 53.) As a result, plaintiff was taken by ambulance to the emergency room where various tests were conducted and x-rays were taken. (Id., 52-53.) The tests and x-rays revealed "nothing wrong" with plaintiff and she was sent home. (Id., 53-54.) Plaintiff continued to work at this time and was able to perform her responsibilities at AUSSIE without problem. (Id., 54-55.)

Following this incident, plaintiff's doctor referred her to a neurologist and a psychiatrist. (Id., 64.) On April 22, 2004, plaintiff's neurologist, Dr. Laura Gray Schoenberg, diagnosed plaintiff with cervical and lumbar radiculopathy with a herniated disc, as well as gait disturbance, (Ex. F and G, annexed to Decl. of Jennifer L. Mazzo, dated Mar. 21, 2007 ("Mazzo Decl.")), which plaintiff alleges is due to the prolonged use by her of the uncomfortable office

---

[1] The educational consultants that AUSSIE places in schools typically invoice AUSSIE for the time they spend in a school, which is usually allotted in days, and AUSSIE then bills the client for the service. (Sandul Aff., ¶ 6.)

chair.[2] (Compl. ¶¶ 19-28.) By letter dated April 22, 2004, Dr. Schoenberg advised that, as a result of her condition, plaintiff would be unable to return to work until May 17, 2004, approximately three weeks later. (Mazzo Decl., Ex. F.) Plaintiff was prescribed physical therapy and Motrin to help alleviate her condition and was advised that she did not appear to have suffered any irreversible damage. (Mazzo Decl., Ex. G.) Plaintiff thereafter submitted Dr. Schoenberg's letter to AUSSIE. (Craan Dep., 81-82.) Plaintiff also spoke with Sandul via telephone to inform her that she would need to be out of work for approximately three weeks as a result of Dr. Schoenberg's diagnosis. (Id., 82; Sandul Aff., ¶ 11.) Sandul instructed plaintiff that her medical leave would be without pay. (Craan Dep., 82.)

On April 29, 2004, Judy Kitchen ("Kitchen"), AUSSIE's Chief Executive Officer, telephoned plaintiff and informed her that her employment with AUSSIE was being terminated, effective April 30, 2004. (Craan Dep., 86; Sandul Aff. ¶ 13.) During this conversation, which plaintiff recorded a portion of, (Craan Dep., 88), Kitchen stated as follows:

> Well, it's a bit of a difficult situation because as you know we just have to keep processing invoices. So I think given the circumstances, I think that we're going to have to let you go. And further down the track if, you know, things change, well, maybe give us a call and we'll have to re-think but you know what's happening over the next two months. Basically, you know, I've got to have somebody here who is doing all that has to be done.

---

[2] Plaintiff alleges in her complaint that her physician advised her that the cervical and lumbar radiculopathy was due to "sitting on a broken chair at work." (Compl. ¶ 28.) Plaintiff testified to this at her deposition as well. (Craan Dep., 67.) However, a review of Dr. Schoenberg's diagnosis of plaintiff demonstrates that while plaintiff informed Dr. Schoenberg that she had "been working on a broken chair at work," there is no indication that Dr. Schoenberg definitively ascribed plaintiff's condition to the uncomfortable office chair. (Mazzo Decl., Ex. G.) Rather, Dr. Schoenberg states in her diagnosis that she "encouraged [plaintiff] to contact some of her employers so that better working conditions [could] be arranged to ensure prevention of further aggravation of [plaintiff's] neck and low back problems." (Id.)

(Transcription of telephone call between plaintiff and Kitchen, dated Apr. 29, 2004, at 13, annexed as Ex. I to Mazzo Decl.) Kitchen then informed plaintiff that she would be paid up through April 30, 2004, as well as an additional two weeks severance pay because Kitchen felt that it was "the right thing to do" for plaintiff. (Id., at 13-14.) Plaintiff then inquired as to whether she was being terminated because she was "sick." (Id., at 17.) Kitchen responded "[n]o. I'm firing you because basically the job that you've been employed to do is not being done." (Id.) At a later point in the conversation, plaintiff stated "[s]o basically you're firing me because I'm sick, not because I'm capable." (Id., at 22.) Kitchen again responded "[n]o, I'm not firing you because you're sick, I'm firing you basically because the work that I hired you to do isn't being done." (Id.) Plaintiff testified at her deposition that she was physically able to perform her job at AUSSIE at the time of her conversation with Kitchen on April 29, 2004. (Craan Dep., 89.)

Plaintiff commenced the within litigation on December 7, 2005, alleging violations of the ADA, the NYSHRL and the Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601 et seq. ("FMLA"). Plaintiff asserts that AUSSIE violated the ADA and the NYSHRL by terminating her employment and refusing to reinstate her employment because of plaintiff's disability or perceived disability. (Compl. ¶¶ 37, 43.) Plaintiff further asserts that AUSSIE also discriminated against her, solely in violation of the ADA, by denying her a reasonable accommodation. (Id. ¶ 38.) Plaintiff's FMLA claim was voluntarily dismissed with prejudice on August 4, 2006. (Order of Hurley, J., dated Aug. 4, 2006.)

AUSSIE asserts that it is not subject to the ADA because it is not an "employer" within the meaning of the ADA. AUSSIE further asserts that plaintiff was not disabled as defined by

the ADA, nor was her termination due to any disability. Rather, AUSSIE maintains that it terminated plaintiff because "she was not at work processing consultant invoices during AUSSIE's busiest billing period." (Sandul Aff., ¶ 14.) For these reasons, AUSSIE seeks summary judgment in the within action.

DISCUSSION

I.  <u>Legal Standard for Summary Judgment</u>

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986). The burden is on the moving party to establish the lack of any factual issues. <u>See</u> <u>Celotex</u>, 477 U.S. at 323. The very language of this standard reveals that an otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties. <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247 (1986). Rather, the requirement is that there be no "genuine issue of material fact." <u>Id.</u> at 248.

The inferences to be drawn from the underlying facts are to be viewed in the light most favorable to the non-moving party. <u>See</u> <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 588 (1986). When the moving party has carried its burden, the party opposing summary judgment must do more than simply show that "there is some metaphysical doubt as to

the material facts." Id. at 586. Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248.

When considering a motion for summary judgment, the district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions." SEC v. Meltzer, 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006) (quoting Brady v. Town of Colchester, 863 F.2d 205, 211 (2d Cir. 1988) (internal citations omitted). "Where the non-moving party would bear the ultimate burden of proof on an issue at trial, the burden on the moving party is satisfied if he can point to an absence of evidence to support an essential element of the non-movant's claim." Meltzer, 440 F. Supp. 2d at 187.

Summary judgment should not be regarded as a procedural shortcut, but rather as an integral part of the Federal Rules of Civil Procedure, which are designed to "secure the just, speedy and inexpensive determination of every action." Celotex, 477 U.S. at 327. Rule 56 must be "construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those persons "opposing such claims and defenses to demonstrate, . . . prior to trial, that the claims and defenses have no factual basis." Id. By its terms, Rule 56 does not require that a trial judge make any findings of fact. See Anderson, 477 U.S. at 250. The only inquiry to be performed is the determination of whether there is a need for trial. See id. The court's principal analysis on a motion for summary judgment is to ascertain whether there are any

"genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Id

II.   Plaintiff's ADA Claim

The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a); see also Buckley v. Consol. Edison Co. of N.Y., Inc., 155 F.3d 150, 153-54 (2d Cir. 1998) (quoting 42 U.S.C. § 12112(a)). Under the ADA, a "covered entity" includes an employer, see 42 U.S.C. § 12111(2), which is defined as "a person engaged in an industry affecting commerce who has 15 or more employees for each working day in each of 20 or more calendar weeks in the current[3] or preceding calendar year, and any agent of such person . . . ." Id. § 12111(5)(A).

"Whether an entity is an 'employer' is a question of law" to be decided by the court. United States v. New York State Dep't of Motor Vehicles, 82 F. Supp. 2d 42, 46 (E.D.N.Y. 2000) (citing Amarnare v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 611 F. Supp. 344, 348 (S.D.N.Y. 1984)). Such a determination is not a "jurisdictional matter," but rather, whether an entity satisfies the fifteen-employee requirement of the ADA "goes to the merits of the [plaintiff's] claim." Pavel v. Plymouth Mgmt. Group, Inc., No. 02-CV-6195, 2005 U.S. Dist. LEXIS 44402, at *2 (E.D.N.Y. Oct. 18, 2005), aff'd, 198 Fed. Appx. 38 (2d Cir. 2006) (citation

---

[3] The "current" calendar year is the year in which the allegedly discriminatory practice occurred. See Rovira v. New York Apparel Sales, No. 01 CV 2331, 2002 U.S. Dist. LEXIS 13543, at *10 n.6 (E.D.N.Y. May 31, 2002) (citing cases).

omitted); see also Da Silva v. Kinsho Int'l Corp., 229 F.3d 358, 365 (2d Cir. 2000) (holding that the plaintiff's failure to demonstrate that the defendant satisfied the fifteen-employee requirement "is not a ground for dismissing for lack of subject matter jurisdiction or even for failure to state a claim; it is a ground for defeating her federal claim on the merits").

To be considered an employer within the meaning of the ADA, AUSSIE must have employed fifteen or more employees for each working day for twenty or more calendar weeks during either 2003 or 2004. An employee is defined in the ADA as "an individual employed by an employer." 42 U.S.C. § 12111(4). AUSSIE asserts that it had fewer than fifteen employees during 2003 and 2004 and offers the affidavit of Sandul, AUSSIE's Finance Manager since December 2002, as well as its payroll records for 2003 and 2004 - which indicate that AUSSIE employed no more than fourteen people at any point during those two years - in support of its claim. (Sandul Aff. ¶ 7 and Ex. A, annexed thereto.) Plaintiff, however, contends that "some of Defendant's workers may have been misclassified by Defendant as 'Independent Contractors' or 'Consultants,' and therefore not considered employees, as defined under the ADA." (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J., 7.) Plaintiff offers the following exhibits in support of her assertion: (1) an AUSSIE employee list, (Mazzo Decl., Ex. J); (2) documents provided by AUSSIE to its workers with "detailed instructions on how to fill out Visa forms," as well as an "answer key" provided by AUSSIE "for workers to fill in specific answers,," (id., Ex. L); (3) a document entitled "AUSSIE Induction Information," (id., Ex. M); (4) a document entitled "Financial Information for AUSSIE Consultants - June 2003," (id., Ex. N); and (5) documents describing AUSSIE and the various services it provides. (Id., Ex. O.) According to plaintiff, the foregoing documents support her assertion that AUSSIE "exerted significant control over [its]

consultants, to create the existence of an employment relationship," thereby bringing AUSSIE's employee total to at least fifteen for the years 2003 and 2004 and rendering AUSSIE a "covered entity" for purposes of the ADA (Id., ¶ 17.)

In Walters v. Metropolitan Educational Enterprises, 519 U.S. 202 (1997), the Supreme Court addressed the issue of how to determine the number of employees an employer "has" for purposes of the fifteen-employee requirement under Title VII.[4] See id. at 204. In doing so, the Court explicitly adopted what it termed the "payroll method" in making such a determination. Pursuant to the payroll method, "the test for whether an employer 'has' an employee is no different from the test for when an individual *is* an employee: whether the employee has an employment relationship with the individual on the day in question." Id. at 206 (emphasis in original). This is generally referred to as the payroll method "since the employment relationship is most readily demonstrated by the individual's appearance on the employer's payroll." Id.

In the within action, AUSSIE's Finance Manager, Sandul, avers that "[d]uring the years 2003 and 2004 . . . AUSSIE had fewer than 15 employees." (Sandul Aff., ¶ 7.) Moreover, the payroll records submitted by AUSSIE demonstrate that at any given time during those two years, the maximum number of employees who appeared on AUSSIE's payroll was fourteen (14). (Sandul Aff., Ex. A.) Such evidence constitutes sufficient proof that AUSSIE did not employ fifteen or more employees during the current or preceding years in which plaintiff was employed, and therefore is not considered an "employer" within the meaning of the ADA. See Pavel v. Plymouth Mgmt. Group, Inc., 198 Fed. Appx. 38, 41 (2d Cir. 2006) (affirming district

---

[4] The definition of "employer" under Title VII is identical to that of the ADA. See 42 U.S.C. § 2000e(b).

court's grant of summary judgment to defendant with respect to plaintiff's ADA claim where defendant submitted affidavits from company officers as well as payroll records demonstrating that defendant did not employ fifteen or more employees during the statutory time period); Persaud v. Ash & Peterkin Central Lock, No. 04 Civ. 4555, 2005 U.S. Dist. LEXIS 641, at *2-3 (S.D.N.Y. Jan. 19, 2005) (recommending that the court grant summary judgment to defendant as to plaintiff's Title VII claim where defendant submitted an affidavit of its President stating that defendant did not employ fifteen or more employees within the statutory time period as well as payroll records evidencing same); Rovira, 2002 U.S. Dist. LEXIS 13543, at *10-11 (denying defendant's motion for summary judgment where defendant failed to submit any evidence to substantiate its claim that it did not employ fifteen or more employees during the statutory time period and noting that employment records or an affidavit from a company officer would have satisfied defendant's burden).

Plaintiff attempts to rebut the evidence presented by AUSSIE by conclusorily stating that "some of Defendant's workers *may* have been misclassified by Defendant as 'Independent Contractors' or 'Consultants,' and therefore not considered employees, as defined under the ADA." (Pl. Mem. of Law in Opp'n to Def. Mot. for Summ. J., 7) (emphasis added). Plaintiff offers various documents in support of this assertion, none of which, however, raise a genuine issue of material fact as to whether AUSSIE employed fifteen or more individuals during 2003 or 2004. For example, plaintiff offers an "AUSSIE Employee List," which was "annexed to Plaintiff's Rule 26(a)(1) Automatic Disclosures," (Mazzo Decl., ¶ 12), and lists twenty-one individuals that are purported to have been employed by AUSSIE. (Id., Ex. J.) However, as evidenced by plaintiff's counsel's declaration that this list was part of plaintiff's Rule 26(a)(1)

-11-

disclosures, this is a list generated by plaintiff, not AUSSIE. Moreover, nowhere on this list is there any indication as to what years these individuals were employed by AUSSIE or for how long each individual was an employee of AUSSIE's. Rather, the list simply states the individual's name and the position they allegedly held while employed by AUSSIE. Accordingly, such evidence fails to raise a genuine issue of material fact to defeat a motion for summary judgment.

With respect to the remaining documents proffered by plaintiff in opposition to AUSSIE's assertion that it did not employ fifteen or more employees during 2003 or 2004, the result is the same. Plaintiff submits that the documents provided by AUSSIE to its Australian consultants concerning how to fill out their Visa forms, which include sample answers to some of the questions, (id, Ex. L), as well as the "induction information," (id., Ex. M), and the "financial information," (id., Ex. M), provided to these individuals, demonstrate that AUSSIE "exerted significant control over [its] consultants," such that the court should infer that these individuals were employees rather than individual contractors for purposes of the ADA's fifteen-employee requirement. (Id., ¶ 17.) However, a thorough review of these documents lends no support to plaintiff's assertions. Moreover, plaintiff offers nothing more than a conclusory statement that AUSSIE's consultants were "misclassified" as individual contractors. Plaintiff fails to submit any evidence as to which consultants should be considered employees, specifically, their names or any other identifying information. Nor does plaintiff offer any evidence as to when these supposedly misclassified consultants were employed by AUSSIE or for how long. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998) (citing

D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998)). Rather, as stated above, to defeat a motion for summary judgment, plaintiff "must set forth specific facts showing there is a genuine issue for trial." Anderson, 477 U.S. at 248. Plaintiff has failed to satisfy this burden. Accordingly, AUSSIE's "proof that it employed fewer than fifteen employees entitles the Court to grant [it] summary judgment." Persaud, 2005 U.S. Dist. LEXIS 641, at *4 (citing cases).

Based on the foregoing, I recommend that AUSSIE's motion for summary judgment be granted.

II.     Plaintiff's NYSHRL Claim

Having found that plaintiff's ADA claim fails as a matter of law, there is no longer any independent basis for federal jurisdiction in the within action. Although the court has the discretion to exercise supplemental jurisdiction over plaintiff's remaining NYSHRL claim, see 28 U.S.C. § 1367(a), I recommend that it decline to do so. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Marcus v. AT&T Corp., 138 F.3d 46, 57 (2d Cir. 1998) ("In general, where the federal claims are dismissed before trial, the state claims should be dismissed as well."). "While discovery has been completed and the instant case proceeded to the summary judgment stage, it does not appear that any discovery would need to be repeated if [plaintiff's] pendent claim[] [was] brought in state court." Tishman v. The Associated Press, No. 05 Civ. 4278, 2007 U.S. Dist. LEXIS 85588, at *28-29 (S.D.N.Y. Nov. 19, 2007) (declining to exercise supplemental jurisdiction over remaining state claim after summary judgment was granted to defendants on

plaintiff's Age Discrimination in Employment Act claim) (citation omitted). Moreover, "'[s]ince [New York's CPLR § 205] allow[s] a plaintiff to recommence a dismissed suit within six months without regard to the statute of limitations,' plaintiff[] will not be prejudiced by the dismissal of [her NYSHRL] claim[]." Id. (quoting Trinidad v. N.Y City Dep't of Corr., 423 F. Supp. 2d 151, 169 (S.D.N.Y. 2006) (alterations in original) (additional citations omitted).

Accordingly, I recommend that plaintiff's NYSHRL claim be dismissed without prejudice.

RECOMMENDATION

For the foregoing reasons, the undersigned recommends that defendant's motion for summary judgment be granted and that plaintiff's complaint be dismissed in its entirety.

OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), and 72(b); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822 (1994); Frank v. Johnson, 968 F.2d 298 (2d Cir. 1992), cert. denied, 506 U.S. 1038 (1992); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

SO ORDERED.

Dated: Central Islip, New York
       January 29, 2008

                                            <u>/s/ E. Thomas Boyle</u>
                                            HON. E. THOMAS BOYLE
                                            United States Magistrate Judge